14-17.2, the Cal Memorial Institute, et al. v. Dicecca, et al. Good morning. May it please the Court, my name is Robert Dengler and I represent the petitioners Patel Memorial Institute and Vigilant Insurance Company. This appeal presents an important legal issue under the Defense-Based Act, which is a federal workers' compensation law that covers certain classes of civilian employees who work overseas. Now, many of these employees work on U.S. military bases for U.S. defense contractors or, as in this case, work for U.S. defense contractors under so-called public works contracts, public works contracts being defined as work connected to overseas construction projects or national defense activity. Since 9-11, there have been an increasing number of workers who are covered under the Defense-Based Act. We have many, many different projects overseas. Obviously, the wars in Iraq and Syria have significantly privatized military functions. So the issue of coverage, the scope of coverage under the Defense-Based Act is an important one. I also will add that it's not just U.S. citizens who are covered under this law, it's also local nationals, third country nationals. So the amount of people covered under the Defense-Based Act today is significantly more than it was a question that is presented by this appeal, which is, under what circumstances is an off-duty injury a compensable injury under the Defense-Based Act? Counsel, in pursuit of that argument, you suggest to us, and I'd like to understand where this suggestion comes from. You seem to suggest that the case law supports the proposition, and more it supports the proposition, that the zone of special danger test requires that the injury be related to recreational or social activities required by the conditions of the job, or that there is something inherently dangerous about the worker's assignment and that the injury relates to the dangers inherent in the job. And I don't understand where you find those categories in the law. I don't think the law limits it to those two categories, but the vast majority of cases fall into those two categories. I believe the law requires that the injury arise from conditions created by overseas employment. So there needs to be that connection between the employment conditions and the injury. It happens that in many cases the injuries have occurred during off-duty recreational and social activities, and the courts there have held that there is the requisite employment connection, because in remote places where social and recreational activities are limited, the employee is able to go out and find it. That is a different circumstance than what you might get if you have a stateside employee. And the courts have also recognized that the employees, when they do that overseas, when they go seek out these recreational and social opportunities, it's in the benefit of the employer as much as it is in the benefit of the employee. So there is the connection, but there always is a connection. Well, counsel, the law is very clear that the activity that may have led to the injury does not have to be for the benefit of the employer. I mean, just Frankfurter makes that very clear in his seminal opinion in this area. Isn't that so? And that is true, but in the category of recreational and social opportunities, that point has been made. So while it's not necessary when addressing the particular circumstance of off-duty recreational and social activities, that point has been made by the courts, that they're limited. So you seem to be taking a rationale that might have supported the decision in a particular case and making it an all-encompassing requirement in this area. That seems to frankly be a logical fallacy to extend those particular rationales responsive to the facts of the case, again, to an all-encompassing requirement. I cite the cases involving recreational and social activities merely to point out that the courts have always found the connection. So it doesn't have to be recreational and social activities, but the courts have always found a connection between the employment conditions and the injury. And they've always made sure to find that the injury arose out of the employment conditions. So I'm not here to say that the injury needs to occur during a recreational and social activity. What I'm saying is the injury needs to arise out of conditions that were created by the employment. And we don't have that here. Why don't we have that here? Why doesn't every element of the rationale that you've explained to us with respect to social activities apply here? Social activities, it's in the employer's interest to have the employee have some, and in foreign places and so on, you have to seek them out. They're not so readily available. Here, it's certainly in the employer's interest that the employee eat. And unlike the United States, he doesn't have a supermarket, more or less, around the corner. He had to go what for most people would be a somewhat unusual distance to find one. Why isn't he making the same effort to find sociability and recreation? In each case, it's because his employment has put him in this place in which there is something unusual about the conditions in which you find these desirable things. Two answers to that question, Justice Souter. First, with the recreational and social activities case law, the courts did emphasize that the employee had to have some social activities that he might not otherwise seek out stateside. So if he had been going to a party in this particular city in Georgia, you would say it still would not be covered? That would be a question. That may not be covered because this is certainly a different.  That would be the argument. But to your second question, he took an eight-mile trip to a grocery store. There was testimony that there were grocery stores that were closer, but this was a bigger grocery store, had a better selection. I don't believe that an eight-mile trip to a grocery store is necessarily something that's unique or different from conditions that you would see in the United States. Would you call that a frolic of his own? I mean, that's sort of the phrase that is used in a disapproving way to suggest there's not a sufficient relationship between the employment and the activities. It seems to be what you're saying, but choosing to go eight miles to a better grocery store, that that was some kind of frolic on his part, and there should be no compensation. Yeah, well, it was a personal choice having nothing to do with his employment. His employment conditions didn't put him in... I thought you were making a slightly different argument. So there's one instance in which if it's a true frolic, completely unrelated, maybe there's an argument like in the cosmetic surgery case where it's not covered. Okay? If it's a social activity that's foreseeable but unusual because of the remote circumstance, it is covered because that's within the special zone of danger. I thought your argument was the reason this is not covered is it's too mundane and routine. It's the kind of thing you would do stateside. People go to grocery stores. It has nothing to do with the special zone of danger that he's in that he got in a car accident going to the grocery store. That is my argument. Okay, if that's your argument, what are we to do with the fact that we have to give some deference to the agency? And the agency's view was looking at all the facts of this situation in Georgia, given the driving conditions there, the difficulties of getting to a market, the fact he can't drive himself, he's going to have to take a cab, that it's fair to say this accident is a foreseeable hazard that stateside you might not have encountered. Well, that would be the agency's interpretation of what the facts are here, which I would disagree with, and I don't think are entitled to any deference. But I thought our case law was that we give at least a bit more deference. We're supposed to give it some deference. Some deference. Deferenties, they apply this regularly, so why would we not give it any credence? I think deference would be limited, whereas here they're interpreting not the statute, because the statute talks about an injury arising out of and in the course of employment, but case law that interprets that particular statutory provision in the context of the Defense Space Act. Go ahead. But the trip to the grocery store is different from the recreational social activities. The trip to the grocery store is something that he would have done in the United States. It's not any different. Not in the way it was done here. People don't usually hire a cab and travel 20 miles to find a grocery store that's clean and provides acceptable food. This was something unusual, required arguably by the condition of his employment, in a country where that's what you had to do to get decent groceries. I would respectfully disagree, Judge Lopez. I know a lot of people that will travel an extra distance to go to a larger supermarket. I have done that myself. Were they doing it because there were flies on the meat on the nearest supermarkets? That, there is some testimony to that effect by the widow. But I don't believe taking a very safe taxi service, it's a Mercedes Benz vehicle, and going eight miles put. But the question is why he's doing it. And his reason for doing it seems to be peculiar, at least by American standards, seems to be peculiar to the, we'll call it the sanitary remoteness of the country that he's in. I would respectfully disagree. I think that the record will show he went eight miles, and this is not, it wasn't a 20-mile trip, an eight-mile trip to go to a supermarket with a larger selection. And the idea that, well, he's purchasing food, and that helps his employment. We all need to consume food. That's not a condition that the employment creates. That's a condition that's created by the fact that we're human beings and we need to nourish ourselves. Most people need a little sociability in life. Well, that's true, too. Most of us are not desert hermits. Right. I've tried. But, again, there, what the courts are focused on. You're newly eligible for benefits. But there, what the courts are focused on is the remoteness of the location. In other words, you're doing something that you wouldn't be doing if you were working in the United States. And here, factually, he wasn't doing anything that he wouldn't be doing if he were in the United States. Now, Justice Breyer, I could ask you how far the closest supermarket is to you. I'm not sure how long that would be. But I know that, in many cases, people do travel 8, 10, 15 miles to go to a better supermarket. That's what he chose to do. It was a purely personal decision that he made on a Saturday afternoon to do that. Thank you. Good morning, Your Honors. I'm Chris Mirati for the respondent, Sandra DiCecca. The court's review in this matter is narrow and limited to error of law and whether there is substantial evidence on the record to support the administrative law judge's findings. The administrative law judge found applying the zone of special danger doctrine to this case, that benefits be awarded to Sandra DiCecca under the Defense Base Act. The court looked to the O'Leary seminal case, the decision that's been cited in my brief and in the petitioner's brief, which states that all that is required is that the conditions or the obligations of the employment create a zone of special danger out of which the injury arose. The administrative law judge considered the conditions of Mr. DiCecca's employment in undergoing the analysis for the zone of special danger doctrine. So what is the special danger here? Specifically, is there evidence in the record that driving in Georgia was particularly dangerous? There was some evidence from Mrs. DiCecca that the drivers in Georgia did not respect the rules of the road. They did not respect pedestrians. They would often fill more lanes. If the lanes were for three cars, you'd find four cars in those lanes or five cars in those lanes. And there was also some testimony from Mr. Pierce about the heightened use of alcohol in that country. Because in this case, Mr. DiCecca was hit head-on by a drunk driver. Are those kinds of factual findings necessary to support the determinations that are issued here? Does there have to be evidence of that kind, that driving for the reasons you cite is more dangerous? I don't believe so, General Lopez, because I believe that what we have here, and as your honors have noted, is there were conditions of the employment that required Mr. DiCecca to take this employer-provided taxi cab in order to travel a 20-minute ride, and that was the testimony on the record, that it was a 20-minute ride without traffic, to this Goodwill supermarket where he could obtain fresh groceries. There were limited shopping options. The testimony on the record is clear, that there was one small market that was in walking distance from his apartment, but based on the testimony of Mrs. DiCecca, the food there was dubious. She did not believe that it was safe. She said that she often saw flies on the meat that was displayed in that store. So her husband was made to have to use this transportation that was provided for by Battelle, its employer, in order to get fresh groceries. And it's also important to note that he is working in a biosafety lab on the outskirts in a rural area of Tbilisi. His employment with Battelle requires that he live in Tbilisi, Georgia. The facility itself has no restaurant, no shopping center, no housing accommodations for its employers, so Mr. DiCecca is forced to find his own employment. He is also forced to take care of the necessities of life, which clearly include obtaining groceries for him to eat and survive in order for him to do his job there. And another important point that I would love your honors to recognize is that Mr. DiCecca is being paid danger pay. And if you look at the appendix at page 183, the danger pay is provided when the host location is dangerous. The living conditions are dangerous or difficult and the facilities are inadequate. So by virtue of the fact that Battelle is paying danger pay to Mr. DiCecca, it's acknowledging and admitting the dangerous, difficult living conditions in Tbilisi that Mr. DiCecca was forced to. Just to get a sense of what findings would be necessary, is the position that any car accident that he gets in that he doesn't cause? I mean, just if he, anytime he's driving, if there's an accident in Georgia, it falls within the zone of special danger? Or is there something more that's required than showing that? I think that in this case, clearly there should not be, this court should not carve out a shopping, a grocery shopping exception to the zone of special danger. In this case... I'm asking the opposite way, which is, is there a special shopping market inclusion for the zone of special danger? Or is the basics of the argument that it's very dangerous to drive in Georgia more than other places? So if one of your employees is in a car and gets in a car accident, you're on the hook for it. Or is there something more here that's related to the shopping? Is that real key, that because he had to go further to shop in Georgia, that added to the danger? I do believe that that is key. I do believe that that is key because he had, that was where he needed to go to get fresh groceries. There is no evidence on the record that there was any other place for him to shop other than this store that was in walking distance from his apartment that had dubious food with flies flying around it, and this Goodwill supermarket that was his 20-minute drive. And Battelle, as the employer, provided this taxi cab service to its employees to be used for any purpose, including grocery shopping. So if he had just been walking, had chosen to walk to the inadequate grocery store nearby and was killed by a driver, he's a pedestrian, he's killed by a driver, what would be your position in that case? How would the zone of special danger apply? I think that it still would be covered. Why? Because we did have testimony about the fact that it was unsafe for pedestrians in the city, that the drivers in Georgia do not respect the rules of the road. So in that case, those kinds of factual findings would be essential to support the zone of special danger? I believe so, but certainly in the facts in this case, certainly in the facts in this case. Let me ask you one more question that you can't fail to answer. Are you pronouncing the name of the city Tbilisi? I've often wondered. I'm not sure how you pronounce it. Tbilisi is my understanding of the pronouncement. I knew you'd come through. Thank you for your consideration. Good morning, Your Honors. Matthew Boyle for the Director of OWCP. I also don't know how it's pronounced, but I would also go with Tbilisi, just for the record. Your Honors, the employer's entire argument in this case is based on a premise that was rejected by the Supreme Court 64 years ago in the O'Leary case, the seminal DBA zone of special danger case. And that premise is that an employee, an overseas employee's injury can't be covered unless there's some direct relationship between the injury and the employment. And O'Leary effectively rejected that argument. So that there does not have to be a causal relationship between the employment and the injury. And the employee does not have to be engaged in an activity that benefits the employer at the time of his injury. But I don't think that's his argument. With respect, I think what he's, if I understand his argument, is that the zone of special danger means there's got to at least be a special danger. And so that it's not the case that everything an employee does while overseas is subject to being covered. One thing an employee could do that wouldn't be covered would be something so completely unforeseeable that like, or so, I mean, I guess the cosmetic surgery is that one case. But on the other side, something that is so, happens everywhere all the time. I fall out of bed and my, you know, and I injure myself when I fall out of bed. I could do that stateside or I could do it in Tbilisi. The fact that it happens to me in Tbilisi doesn't mean that there's coverage. I assume you agree. I do agree. Okay. So then the question is, why is this case not like falling out of the bed? What is special about the danger that arose here that comes from being in this special zone in Tbilisi? Yes. Because it arose from the conditions and obligations of the employment. And those conditions were, first of all, that the most obvious one is that Mr. The second one is that the employer, the employees were required to live in a local economy and go out and get food on their own. And the third one is that the employer actually gave the employees taxi vouchers so they could do just those kinds of tasks. So those were the conditions and obligations of the employment. Now, what the case law says, basically, is that if the conditions and obligations of employment are related to what happened to you, then as long as you were doing something reasonable and foreseeable at the time of the injury, then you are covered. So as to your question about this could happen anywhere, well, I'll give you some examples of things that have been found covered. People boating. People go boating at home. People park in romantic locations at home. People get rights to work from coworkers at home. They go hitchhike at home. They go out to bars for beers with friends at home. And in the Kalama case, they do stupid things in bars and get kicked in the head sometimes. None of those things would be covered. I'm just trying to get a sense of what the boundary might be. I mean, just take my example. If I did fall out of bed, I'm employed in Tbilisi, I have to live in Tbilisi, and I fall out of bed in Tbilisi and I injure myself. Is that covered? I don't want to cop out, but I honestly don't know. So why don't you? I mean, just help me figure out what might be the – why would that not be an obvious case of covered? People fall out of bed in the United States, right? But you say that's not a reason to say you're not covered. So why is that a more challenging case than this one? Well, I think it is because this, first of all, is a motor vehicle accident case, and in every motor vehicle accident case, off-duty motor vehicle accident case, that has come up in any court, they've all been found covered, whether it was a driver, a passenger, or a pedestrian, whether the vehicle was parked or moving, and regardless of the type of vehicle it was. It was a company Jeep or a primary contractor's vehicle or a motor scooter borrowed from a friend. So we have uniform coverage for off-duty motor vehicle accident cases from every court that's ever looked at them. Now, for the falling out of bed, I think the best way to look at this, Your Honor, is what this court said in the Trusinskis case, which is, in that case, there were two possibilities of why the employee died. One was suicide and one was autoerotic asphyxiation, where he accidentally hung himself. And the court said, well, neither one of those covered. The suicide's not covered because there's an exception in the statute, and the autoerotic asphyxiation would not be covered because it was not a reasonable or foreseeable activity. In other words, it had no relation to the conditions of employment. Now, here, Mr. Dischak had gotten into a cab to go grocery shopping because he had to live in the local economy and because the employer gave him taxi vouchers to get there. There was no relation to the employment for either Mr. Trusinskis or another, strangely enough, autoerotic asphyxiation case out of the board, the Gillespie case, because those aren't reasonable or foreseeable activities. And even if they are somehow foreseeable, somehow related to the conditions of employment, these guys were really bored and they had nothing else to do, it's just not a reasonable activity. Counselor, but I think the concern is that, and I think this is clearly the employer's concern, that there's no real content left to this zone of special danger test. And to some extent, the way you're describing it, I think, supports that concern. It seems to be, your argument would be that say you're in France, you're required to be in France, there's no evidence that there's anything particularly dangerous about driving in France, but if you choose to drive your car to a grocery store in France and you are killed in an accident such as is here, you would seem to say that you're still covered. Maybe, Your Honor. Does the maybe depend, again, on factual findings, such as those that arguably we have in this case, that there's something particularly dangerous about driving? Not that there's something particularly dangerous about it, Your Honor, but that the employees here had no options. If the employer in France had a grocery store next door that was a perfectly good grocery store, or if they offered on-base housing with restaurants, then you would probably have a different outcome. But when you're answering this question, I'd like the Court to think about some of the things that have been covered. By the Supreme Court, in the O'Keefe versus Smith-Hinchman and Grills case, we had a defense worker who went 30 miles away from his base in Korea, overfilled a boat with sand and tried to navigate it back across the lake. In doing so, he capsized the boat and drowned. Now, the Court found it was covered because the employer expected the employees to go off-base during weekends and holidays. Well, it's pretty clear here that the employer expected people to take taxis around the country. They gave them vouchers to do so. So I don't know that I can draw you a definite line over what's covered. Your theory is basically because of the requirement to be overseas, the employer just takes on a level of obligation for even relatively routine activities of employees. That's just not true of employers stateside. That's the basic operation. And when the employer loses the responsibility for that is when the employee does something so completely unforeseeable. Correct. But the fact that something is routine doesn't make any sense. I mean, the special zone of danger is what imposes the liability on the employer. Correct. But then as long as anything that the employee is doing that's foreseeable while employed, the employer is liable. And Professor Larson analogizes this to traveling employees under state comp laws, which if you're out for your job and you're staying in a hotel, anything you do that's reasonable while you're traveling, even if it's not directly related to your work, is covered. Any further questions? Thank you.